■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v REGGIE SMITH, True Name CRAIG SMITH, Respondent. — Order, Supreme Court, New York County (Wingate, J.), entered April 28, 1982, granting motion to suppress physical evidence, reversed, on the law, and the motion to suppress is denied. On April 28, 1981 two detectives observed the defendant enter a subway station without paying a fare. In response to a question the defendant admitted that he did not have a pass. He was then asked whether he was wearing a bullet-proof vest and falsely responded that it was his T-shirt. One detective drew his gun, and the defendant was escorted to the porter's room. A briefcase he was carrying was taken from him by a detective who opened it and found within a loaded .38 caliber pistol, handcuffs and other items. Almost simultaneously the defendant was handcuffed. Although finding credible the testimony of the detectives, the hearing court granted defendant's motion to suppress the evidence in the briefcase on the view that the search was unlawful. Relying upon *United States v Chadwick* (443 US 1), the court held that "the warrantless search of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest if no exigency occurs." He also found, in what appears to have been an inadvertent error, that the defendant was in handcuffs before the briefcase was opened. We disagree with the court's conclusion that the search of the briefcase was unlawful and accordingly reverse the order appealed from by the People and deny the motion to suppress. The central question presented is whether, incident to a lawful arrest, the police may contemporaneously search the inside of a briefcase, package, or the like, carried by the arrested person or effectively in his possession, after the object has been removed so that the arrested person no longer has ready access to it. In the wake of the three *Belton* decisions (*People v Belton,* 50 NY2d 447; *New York v Belton,* 453 US 454; *People v Belton,* 55 NY2d 49), the answer to that question is unclear. The precise issue before us appears never to have been specifically addressed by the United States Supreme Court (see *Arkansas v Sanders,* 442 US 753, 764, n 11), and the most recent of the decisions of the New York Court of Appeals, relevant to the question, *People v Caldwell* (53 NY2d 933), in any event distinguishable on its facts, was decided before the decision of the United States Supreme Court in *New York v Belton* (*supra*), which puts in doubt its continued viability. The underlying difficulty has its genesis in the formulation of the governing rule by the United States Supreme Court in *Chimel v California* (395 US 752). Addressing the right of the police to make a warrantless search of a home incident to a lawful arrest, the court said (at p 763): "There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." This formulation left open two questions which have given rise to a variety of judicial approaches. One involved the question as to what was embraced in the term " 'within his immediate control' " or "grabbable" area, as it has come to be called. The second was whether the right to search within the defined area was limited by the stated reasons and whether the right survived even where no practical possibility existed that the arrested person could secure a weapon or destroy evidence. In *People v Darden* (34 NY2d 177), the Court of Appeals squarely sustained as lawful the search of an attaché case carried by the defendant, removed from him, and not within his effective power at the time of the search. This principle was confirmed under similar circumstances in *People v De Santis* (46 NY2d 82). In *People v Belton* (*supra*), the Court of Appeals explicitly disapproved the holdings in *Darden* ard *De Santis.*

The court held with regard to the search of the pockets of a jacket in a vehicle, from which the occupants had been removed, the following (at p 449): "A warrantless search of the zippered pockets of an unaccessible jacket may not be upheld as a search incident to a lawful arrest where there is no longer any danger that the arrestee or a confederate might gain access to the article." The Supreme Court reversed in *New York v Belton* (*supra*), defining the area that may be searched in an automobile as including the passenger compartment of the car as well as any containers found within the passenger compartment. By necessary implication the court rejected the principle that a search is unlawful with regard to an object as to which there is no possibility of access by the arrested person. Although the issue before us was not directly before the Supreme Court, the opinion went on to discuss the court's opinions in *United States v Chadwick* (*supra*) and *Arkansas v Sanders* (*supra*), which had been relied upon by the New York Court of Appeals in the first *Belton* decision. The court's opinion noted that in the *Sanders* case it had explicitly not considered the constitutionality of searches of luggage incident to the arrest of its possessor. Considered together with the rest of the opinion, the analysis by the Supreme Court of *Arkansas v Sanders* strongly suggests, although it does not state so explicitly, that implicit in its decision was a principle that would authorize searches of packages and the like carried by an arrested person incident to the arrest. Indeed the decision has been so interpreted in several later decisions of Federal Courts of Appeals (see *United States v Brown,* 671 F2d 585; *United States v Fleming,* 677 F2d 602). On remand, the New York Court of Appeals sustained the search in *Belton* as permissible under the New York State Constitution on the basis of the automobile exception. Noting that the decision of the Supreme Court in Belton "departed from the rationale in *Chimel*" (see *People v Belton,* 55 NY2d, at p 53), the court declined to address the question as to whether the principles set forth by the Supreme Court in *Belton* were consistent with the requirements of the New York State Constitution. Pertinent here also is the Court of Appeals decision in *People v Caldwell* (*supra*), decided before the Supreme Court's decision in *Belton,* in which the court found unlawful the search of a closed cassette box on the ground near where the defendant was seized, observing that there was no reason to expect the destruction of evidence, nor any indication that the officers had reason to fear for their safety. Summing up the foregoing, it seems to us relatively free from doubt that the principles set forth by the United States Supreme Courts in *Belton* sustain the lawfulness of the search here challenged. This interpretation is clearly supported by decisions of United States Court of Appeals following *Belton* and indeed appears to be consistent with the trend of authority in the Federal courts even before *Belton.* (See, e.g., *United States v Garcia,* 605 F2d 349.) In its second *Belton* decision, the Court of Appeals clearly left open the question whether it would deem the principles set forth by the Supreme Court in *Belton* to be applicable to the rights guaranteed under the New York State Constitution. In the absence of any clear indication that the New York Court of Appeals will interpret the New York State Constitution to embody a different standard from that articulated and implicit in the Supreme Court's decision in *Belton,* and recognizing the uncertain state of the law in this area, we think it appropriate to follow the clear trend of Federal authority and sustain the search in question here. Concur — Kupferman, J. P., Sandler, Lupiano and Milonas, JJ.

Carro, J., concurs in a memorandum as follows: I concur in the result only because of the factual finding that the seizure and search of the briefcase was contemporaneous with the arrest.