STATE OF HAWAII, Plaintiff-Appellant, *v.* LARRY JAMES ORTIZ, Defendant-Appellee

NO. 8636

(CRIMINAL NO. 56185)

APRIL 13, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

144

OPINION OF THE COURT BY BURNS, C.J.

Defendant-Appellee Larry James Ortiz ("Ortiz") was indicted under Hawaii Revised Statutes section 134-7(b) for the possession of a firearm by a person convicted of a felony. Plaintiff-Appellant State of Hawaii ("State") appeals from the granting of Ortiz's motion to suppress evidence of the firearm and the dismissal of the case for lack of legal evidence.[1] We reverse.

On August 12, 1981, at approximately 2:00 a.m., uniformed police officer Brad Bennett was driving in his private, police-subsidized automobile with the customary blue light attached to the roof of the vehicle. While driving in the Wahiawa business area, Bennett saw Ortiz carrying a knapsack in an empty parking lot. Bennett testified that when Ortiz saw him,

---

[1] The validity of the dismissal depends upon the validity and enforceability of the order of suppression. If the evidence is not suppressed or if the order of suppression is stayed, then the evidence is available to be used to defeat a motion to dismiss for lack of evidence.

Ortiz ran towards the side of a building out of his view. After driving into the parking lot, Bennett saw Ortiz seated on the ground with his back to the building.

Bennett approached Ortiz on foot, asked him what he was doing there, and Ortiz responded that he "didn't know." When asked about the knapsack, Ortiz stated that it belonged to him and that nothing was in it. Ortiz then reached out for the knapsack with his right hand, and Bennett immediately grabbed the knapsack from him. While doing so, Bennett felt the butt of a handgun through the thin, canvas-type fabric. Ortiz stood up, and Bennett backed away from him, unzippered the knapsack and saw a handgun and holster therein. Bennett removed the gun from the knapsack, placed Ortiz under arrest, and took him to the police station where the gun was examined and found to be loaded. Subsequent investigation revealed that the revolver had been reported stolen, and that Ortiz was then on parole, was implicated in a couple of pending felony cases, and had previously been convicted of two misdemeanors and four felonies, including robbery in the first degree.

At a suppression hearing, the lower court found that the initial questioning of Ortiz by Bennett was a valid temporary investigative stop short of an arrest; that Bennett had probable cause to believe criminal activity was afoot and, therefore, his subsequent seizure of the knapsack was proper; that no exigent circumstances existed to excuse Bennett from opening the knapsack without a search warrant since it was in the officer's exclusive control at this point; and that although the officer had probable cause to make an arrest upon seizing the knapsack and feeling the gun, the search exceeded the scope of a proper search incident to arrest as per *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974), and violated Ortiz's fourth amendment rights.

A written order granting defendant's motion to suppress evidence was entered on December 14, 1981. On January 5, 1982, the State filed a motion for reconsideration of the court's order. The State's motion was denied by order entered on March 4, 1982. That same day, the court also entered an order granting the defendant's motion to dismiss.[2] The State filed a notice of appeal on March 17, 1982.

On appeal, the issues before this court and our answers are:

1. Whether the State's motion for reconsideration terminated the running of the time for appeal under Rule 37(c), Hawaii Rules of Penal Procedure (HRPP). Yes.

2. Whether Ortiz was entitled to a reasonable expectation of privacy in his knapsack. Yes.

3. Whether the warrantless unzippering of Ortiz's knapsack and the seizure of the gun therefrom can be justified under the investigative stop exception to the warrant requirement. No.

4. Whether the warrantless unzippering of Ortiz's knapsack and the seizure of the gun therefrom can be justified under the incident to a lawful arrest exception to the warrant requirement. No.

5. Whether the warrantless unzippering of Ortiz's knapsack and the seizure of the gun can be justified under a "plain feel" rule. Yes.

I.

The first issue, which we raise *sua sponte,* is whether this court has jurisdiction over the appeal. Rule 37(c), HRPP, generally requires that a notice of appeal be filed by the State within 30 days after entry of the judgment or order appealed from. This rule states:

Time for Taking Appeal. The notice of appeal by a defendant shall be filed within 10 days after the entry of the judgment or order appealed from. A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof. If a timely motion in arrest of judgment or for a new trial has been made, an appeal from a judgment of conviction may be taken within 10 days after the entry of the order denying the

---

[2] Although the lower court dismissed the case against Ortiz for lack of legal evidence, it denied Ortiz's Motion to Release Defendant from Custody. Apparently, Ortiz has not been able to post the required $15,000 bail.

motion. When an appeal by the prosecution is authorized by statute,[3] the notice of appeal shall be filed within 30 days after entry of the judgment or order appealed from. Upon a showing of excusable neglect, the district or circuit court, as the case may be, may, before or after the time has expired with or without motion and notice, extend the time for filing the notice of appeal otherwise allowed to any party for a period not to exceed 30 days from the expiration of the original time prescribed by this section.

(Footnote added.)

In the case at bar, the State's notice of appeal was filed more than 90 days after the entry of the court's order granting defendant's motion to suppress evidence. The State argues, however, that its motion for reconsideration filed 22 days after the entry of the order terminated the running of the 30-day time for appeal under Rule 37(c), and that a new 30-day period in which it could file an appeal began to run after entry of the order denying its motion for reconsideration. Since the notice of appeal was filed 13 days after the March 4, 1982 order denying the motion for reconsideration, the State contends that its notice was timely filed and this court has jurisdiction to hear the appeal.

Although this appears to be an issue of first impression in Hawaii, the United States Supreme Court has held in a similar case that the 30-day period for filing an appeal does not begin to run until the court disposes of a petition for rehearing. In *United States v. Healy,* 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed 2d 527 (1964), the government filed a notice of appeal to the

---

[3] The State was authorized to appeal from the order suppressing evidence pursuant to Hawaii Revised Statutes section 641-13(7) (Supp. 1982) which provides:

§ 641-13 By State in criminal cases. An appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602, in all criminal cases, in the following instances:

\* \* \*

(7) From a pre-trial order granting a motion for the suppression of evidence, including a confession or admission, or the return of property in which case the intermediate appellate court or the supreme court, as the case may be, shall give priority to such an appeal and the order shall be stayed pending the outcome of the appeal[.]

Supreme Court within 30 days of an order dismissing an indictment but more than 30 days after entry of the original judgment appealed from. The Supreme Court held that it had jurisdiction over the case since the notice of appeal was timely filed within the 30-day period prescribed by Rule 11(2) of the Supreme Court Rules.[4] The Court pointed to the "well established rule in civil cases" under which the appeal period begins to run from the date of entry of judgment or denial of the petition for rehearing and noted that it has consistently proceeded on the premise that criminal judgments are nonfinal for purposes of appeal so long as timely rehearing petitions are undecided. *Healy,* 376 U.S. at 78, 84 S.Ct. at 556. The Court reasoned that:

> speedy disposition of criminal cases is desirable, but to deprive the Government of the opportunity to petition a lower court for the correction of errors might, in some circumstances, actually prolong the process of litigation— since plenary consideration of a question of law here ordinarily consumes more time than disposition of a petition for rehearing—and could, in some cases, impose an added and unnecessary burden of adjudication upon this Court. It would be senseless for this Court to pass on an issue while a motion for rehearing is pending below, and no significant savings of time would be achieved by altering the ordinary rule to the extent of compelling a notice of appeal to be filed while the petition for rehearing is under consideration.

*Healy,* 376 U.S. at 80, 84 S.Ct. at 556-557 (footnote omitted).

*Healy* has since been reaffirmed by the Supreme Court in *United States v. Dieter,* 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed. 2d 8 (1976),[5] and has been followed by numerous courts of appeal, *United States v. Martinez,* 681 F.2d 1248 (10th Cir. 1982);

---

[4] Rule 11(2) of the Supreme Court Rules provides:

An appeal permitted by law from a district court to this court in a criminal case shall be in time when the notice of appeal prescribed by Rule 10 is filed with the clerk of the district court within thirty days after entry of the judgment or order appealed from.

[5] *Dieter* extended the rule in *Healy* to cases involving appeals from federal district courts to courts of appeals.

*United States v. Sullivan,* 625 F.2d 9 (4th Cir. 1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1374, 67 L.Ed. 2d 352 (1981); *United States v. Bulgier,* 618 F.2d 472 (7th Cir. 1980), *cert. denied,* 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed. 2d 51 (1980); *United States v. Walker,* 60.1 F.2d 1051 (9th Cir. 1979); *United States v. Woodruff,* 596 F.2d 798 (8th Cir. 1979); *United States v. St. Laurent,* 521 F.2d 506 (1st Cir. 1975), *cert. denied sub nom Venios v. United States,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed. 2d 637 (1976).

Therefore, we hold that the State's motion for reconsideration filed within 30 days after a final judgment or appropriate order terminated the running of the time for appeal and a new 30-day period for taking an appeal began to run upon entry of the order denying the motion for reconsideration.[6] Since the notice of appeal was timely filed, we conclude that we have jurisdiction in this case.

## II.

Both the fourth amendment to the United States Constitution[7] and article I, section 7 of the Hawaii Constitution[8] protect against unreasonable searches and seizures. Generally, judicial warrants are required prior to a search or seizure of "persons,

---

[6] By adopting the rationale of *Healy,* we would bring our rules for criminal appeals in conformity with those for civil appeals. *Anderson v. Oceanic Properties, Inc.,* 3 Haw. App. 350, 650 P.2d 612 (1982). The rationale for our decision in *Anderson,* however, differs from that in *Healy.* Under Rule 73(a), Hawaii Rules of Civil Procedure, a notice of appeal must be filed within 30 days of the judgment appealed from. However, the filing of a rule 59(e) motion to alter or amend the judgment terminates the period and a new, full period for appeal begins to run from an order granting or denying such motion. Thus, in *Anderson,* we likened a motion for reconsideration to a motion to alter or amend the judgment. We are unable to make the same analogy in criminal appeals by the state because Rule 37(c), HRPP, does not have a similar provision.

[7] United States Constitution amendment IV provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

houses, papers and effects" wherein an individual is entitled to a reasonable expectation of privacy. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967); *State v. Okubo,* 3 Haw. App. 396, 651 P.2d 494 (1982), *cert. granted,* 65 Haw. ___ (No. 8286, October 19, 1982). *See also State v. Lester,* 64 Haw. 659, 649 P.2d 346 (1982). Whether a person is entitled to a reasonable expectation of privacy depends upon whether 1) he has exhibited an actual, subjective expectation of privacy; and 2) that expectation is one which society is prepared to recognize as "reasonable." *Katz,* 389 U.S. at 361, 88 S.Ct. at 516 (Justice Harlan, concurring); *State v. Kaaheena,* 59 Haw. 23, 575 P.2d 462 (1978); *Okubo,* 3 Haw. App. at 403, 651 P.2d at 500.

In the case at bar, Ortiz was entitled to a reasonable expectation of privacy in his knapsack. He adequately demonstrated his subjective expectation of privacy by claiming ownership of the knapsack and having it zippered. Ortiz's subjective expectation is one which society is prepared to recognize as reasonable since knapsacks are common repositories of personal effects. *State v. Jenkins,* 62 Haw. 660, 619 P.2d 108 (1980) (knapsack); *United States v. Meier,* 602 F.2d 253 (10th Cir. 1979) (backpack). Ortiz's reasonable expectation of privacy thus generally entitled him to be free from a warrantless search and seizure of his knapsack, including the feeling or opening thereof.

---

[8] Hawaii Constitution article I, section 7 provides:
SEARCHES , SEIZURES AND INVASION
OF PRIVACY

Section 7. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

Although the Hawaii Constitution also contains a right to privacy provision in article I, section 6, we have previously held that it has no effect in criminal search and seizure cases. *State v. Okubo,* 3 Haw. App. 396, 651 P.2d 494 (1982), *cert. granted,* 65 Haw. ___ (No. 8286, October 19, 1982), citing *State v. Lester,* 64 Haw. 659, 649 P.2d 346 (1982).

## III.

Although a warrant is required before the government may intrude upon a person's reasonable expectation of privacy, an exception to the warrant requirement is the investigative stop situation. Both the United States Supreme Court and the Hawaii Supreme Court have held that a law enforcement officer may "in appropriate circumstances and in [an] appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *State v. Melear,* 63 Haw. 488, 493, 630 P.2d 619, 624 (1981), quoting *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). The oft-stated test to determine the validity of a temporary investigative stop, short of an arrest based on probable cause, is whether the police officer can point to "specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880; *State v. Barnes,* 58 Haw. 333, 338, 568 P.2d 1207, 1211 (1977); *Melear,* 63 Haw. at 493, 630 P.2d at 624. As the Hawaii Supreme Court has stated, "The ultimate test in these situations is whether from these facts, measured by an objective standard, a man of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate." *Melear,* 63 Haw. at 493, 630 P.2d at 624, quoting *Barnes,* 58 Haw. at 338, 568 P.2d at 1211; *State v. Madamba,* 62 Haw. 453, 617 P.2d 76 (1980); *State v. Joao,* 56 Haw. 216, 533 P.2d 270 (1975); *State v. Onishi,* 53 Haw. 593, 499 P.2d 657 (1972).

Even if an investigative stop is justified, a warrantless search and seizure in connection therewith is not permissible unless the specific conduct of the detainee, reliable information, or attendant circumstances make it reasonable to infer that the detainee is armed and presently dangerous. *Terry,* 392 U.S. at 24, 88 S.Ct. at 1882; *Barnes,* 58 Haw. at 338, 568 P.2d at 1212. Moreover, the seizure must be "strictly limited to that which is minimally necessary for the discovery of weapons which might be used against the officer or others nearby." *Barnes, id.*

In this case, the trial court found and Ortiz concedes that

the stop and questioning fell within the parameters of a valid investigative stop. Ortiz also concedes that the seizure of the knapsack was proper. Ortiz claims, however, that once Bennett seized control of the knapsack, any further governmental intrusion was restricted to a pat down of Ortiz's person so that the opening of the knapsack was an illegal search.

In *Terry v. Ohio,* the police officer had specific and articulable facts to suspect that the defendant and his two companions were "casing a job, a stick-up" and were in possession of weapons. Upon patting down the outside of defendant's clothing, the officer felt a pistol and reached into the defendant's left breast coat pocket to remove the gun. Unable to retrieve the gun, the officer then removed the defendant's overcoat completely and secured the weapon. The Supreme Court upheld the removal of the gun from the defendant's coat pocket even though the officer was already in control of the coat. The Court found that the officer's actions did not constitute a general exploratory search for whatever evidence of criminal activity he might find and that the search fell within the confines of what was minimally necessary to learn whether the defendant was armed and to disarm him once the weapon was discovered. *Terry,* 392 U.S. at 29, 30, 88 S.Ct. at 1883-1884.

The Hawaii Supreme Court, however, has not hesitated to extend the protection of article I, section 7[9] of the Hawaii Constitution beyond that of the textually similar fourth amendment to the United States Constitution. In *State v. Kaluna,* 55 Haw. 361, 520 P.2d 51 (1974), the court held that where a small tissue-paper packet was unlikely to contain a weapon or evidence of the crime for which the defendant was arrested and where it was safely in the control of a police matron, the warrantless opening of the packet violated the defendant's reasonable expectation of privacy under the state constitution. Although *Kaluna* involved a search incident to a lawful arrest and was not an investigative stop, it is applicable here because a search conducted in connection with an inves-

---

[9] In *Kaluna,* the court discussed article I, section 5 of the 1968 Hawaii Constitution. Article I, section 5 was later renumbered to article I, section 7 following the 1978 Constitutional Convention and ratification of November 7, 1978.

tigative stop is even more restrictive than a search incident to a lawful arrest. *Barnes,* 58 Haw. at 338, 568 P.2d at 1212.

## IV.

In examining the incident to a lawful arrest exception to the warrant requirement, we note initially that to invoke this exception a lawful arrest is necessary. An arrest occurs where the defendant clearly understands that he is not free to go and no "magic words" such as, "I place you under arrest," are required. *State v. Delmondo,* 54 Haw. 552, 557, 512 P.2d 551 (1973); *State v. Crowder,* 1 Haw. App. 60, 613 P.2d 909 (1980), citing *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). The arrest is valid provided the arresting officer had probable cause at the moment of the arrest. The arresting officer has probable cause to make the arrest when he had reasonable grounds to believe, from facts and circumstances personally known to him, or of which he had trustworthy information, that the arrestee had committed, or was committing, an offense. *Crowder,* 1 Haw. App. at 66, 613 P.2d at 914. Probable cause to arrest can develop during an investigatory stop. *Melear,* 63 Haw. at 494, 630 P.2d at 625; *Delmondo, supra.*

In the case at bar, probable cause to arrest Ortiz developed during the lawful investigatory stop and culminated when Bennett seized the knapsack from Ortiz and felt the butt of a gun through the fabric.

Although the arrest did not occur until after Bennett opened the knapsack and seized the gun, the incident to a lawful arrest exception is still applicable. A search or seizure need not be preceded by an arrest in order to be "incident to" a lawful arrest so long as there is probable cause for an arrest prior to the challenged search or seizure and a formal arrest follows soon thereafter. *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Delmondo,* 54 Haw. at 557, 512 P.2d at 554, n.2. Here, the formal arrest came immediately after the opening of the knapsack, so the seizure of the gun was incident to a lawful arrest. *Rawlings,* 448 U.S. at 111, 100 S.Ct. at 2564.

Having found that the seizure of the gun was incident to a

lawful arrest, we now turn to the propriety of the seizure itself. Based on federal case law, the seizure would clearly have been valid under the fourth amendment. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), upheld the warrantless search of the defendant's person in which a crumpled cigarette package was retrieved from the defendant's coat pocket and opened to reveal heroin therein. The Supreme Court reasoned that since a custodial arrest[10] based on probable cause is a reasonable and lawful intrusion under the fourth amendment, a search incident to the arrest requires no additional justification. As the Court stated:

> It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*Robinson,* 414 U.S. at 235, 94 S.Ct. at 477.

In *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), the companion case to *Robinson,* the defendant was arrested for driving an automobile without an operator's license in his possession. Reiterating its position that a police officer is entitled to make a full search of a suspect's person incident to his lawful arrest, the Supreme Court upheld the search of the defendant's person whereby marijuana cigarettes contained in a cigarette box in his coat pocket were found and seized following arrest.

Both *Robinson* and *Gustafson* validated warrantless searches of an arrestee's person and of containers found on the arrestee's person and seized. In *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed. 2d 768, *rehrg. denied,* 102 S.Ct. 26 (1981), the Supreme Court further validated the warrantless search of an area within the control of the arrestee and of containers found therein and seized. The defendant in *Belton* was in a car stopped by police for speeding and was arrested for

---

[10] In *Robinson,* the defendant was in custodial arrest for driving while his license was revoked.

unlawful possession of marijuana after the officer smelled burnt marijuana and saw on the floor of the car an envelope suspected of containing marijuana. After ordering the four men out of the car, the officer patted down each occupant, searched the passenger compartment of the car, unzippered a pocket of a jacket belonging to the defendant, and discovered cocaine. The Supreme Court held that the warrantless search of the passenger compartment of the car and any containers[11] therein was a valid search incident to a lawful arrest under the fourth and fourteenth amendments. The passenger compartment as well as any containers therein were deemed to be within the "areas of immediate control" which the Court in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 2d 685 (1969), had previously ruled could be searched without a warrant following a lawful arrest because of the need to secure weapons or evidence. Even if there was no probability that weapons or evidence would be found, *Belton* sanctioned such searches since the lawful custodial arrest justified the search and the infringement of any privacy interest the arrestee may have.

*Belton* has since been followed by the Florida Supreme Court in *Savoie v. State,* 51 U.S.L.W. 2356 (December 12, 1982) (case decided November 10, 1982), and the New York Supreme Court, Appellate Division in *People v. Smith,* 452 N.Y.S.2d 886 (1982). Based on *Belton,* the *Smith* court upheld the warrantless search of the arrestee's briefcase by detectives who had observed him entering a subway station without paying a fare and wearing a bullet proof vest. In *Savoie,* the court upheld the warrantless search of the arrestee's attache case shortly after he had paid $5,000 and received simulated evidence from a police officer in a bribery case. In following the *Belton* decision, the Florida Supreme Court stated, "The law is

---

[11] In *Belton,* the Supreme Court gave the following definition of a container:

"Container" here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk.

*Belton,* 453 U.S. at 460-461, 69 L.Ed.2d at 775, n. 4.

now clear that when there is a lawful arrest it is a reasonable intrusion incident to that arrest to search both the person and any container that person is carrying." *Savoie,* 51 U.S.L.W. at 2356.

But in Hawaii, the law is not so clear. In *Kaluna,* the Hawaii Supreme Court specifically rejected the holdings of *Robinson* and *Gustafson* and instead held that under article I, section 5 of the Hawaii Constitution,[12] a warrantless search of an arrestee's person incident to his lawful arrest must be strictly limited in scope to disarming the arrestee when there is reason to believe that he may be armed and to discovering evidence of the crime[13] for which he was arrested.[14] The court found that the sole justification for the incident to a lawful arrest exception to the warrant requirement is because an arrestee may use weapons or destroy evidence before a warrant can be obtained. Absent such justification, the court held that under the Hawaii Constitution an intrusion into an individual's privacy must be sanctioned by a warrant. Even where an individual is in custodial arrest, he retains a legitimate interest in the privacy of his possessions. Thus, the court struck down the warrantless search of a small tissue-paper packet containing barbiturates which the defendant handed to a police matron following a body search incident to arrest for attempted robbery. While it was proper for the matron to search for weapons or instrumentalities of the crime, the court reasoned that it was unlikely that the small tissue-paper packet would have contained a weapon. Even if it had, the packet was in the matron's possession so there was no further danger that the defendant could use it. Moreover, since the defendant's arrest was for attempted robbery, there was no reason to believe that the packet would contain any evidence of the crime nor did the matron have any

---

[12] Renumbered to article I, section 7. *See* note 8, *supra.*

[13] The "evidence of a crime" referred to may be either the fruits or instrumentalities of the crime for which the officer has probable cause to believe has been committed by the defendant.

[14] In *Kaluna,* however, the Hawaii Supreme Court conceded that the search would have been valid under the fourth amendment of the United States Constitution. *Kaluna,* 55 Haw. at 368, 520 P.2d at 58.

grounds to suspect that it contained contraband drugs. Therefore, the court held that the warrantless search of the packet by the police matron and seizure of its contents violated the arrestee's legitimate interest in the privacy of her possessions protected by the Hawaii Constitution. *Kaluna,* 55 Haw. at 371, 520 P.2d at 59-60.

The *Kaluna* court, however, reaffirmed its prior decision in *State v. Park,* 50 Haw. 275, 439 P.2d 212 (1968), where it had upheld the warrantless search of the defendant's handbag and seizure of marijuana cigarettes found therein following her arrest for being present at a gambling game.[15] The court stated, "Basically, where the nature of the offense makes it reasonable to assume that evidence of that offense may be located on the arrestee's person or in the belongings in his possession at the time of the arrest, then the police may search those areas without a warrant." *Kaluna,* 55 Haw. at 372, 520 P.2d at 60.

The essence of the *Kaluna* decision is that a warrantless intrusion into a person's reasonable expectation of privacy under the incident to a lawful arrest exception is not permissible in the absence of probable cause to believe that police will find a weapon or evidence of the crime for which the person has been arrested. *State v. Custodio,* 62 Haw. 1, 7, 607 P.2d 1048 (1980). Thus, it is possible to reconcile *Kaluna* with *Park* under a rule that the incident to a lawful arrest exception to the warrant requirement allows a police officer to search the arrestee's person or containers that are within the arrestee's area of immediate control to locate and remove a weapon or evidence of the crime for which the person has been arrested, provided that the officer has reason to believe that such weapon or evidence is on the arrestee's person or in the containers.

Such an interpretation of *Kaluna* and *Park,* however, would still appear to conflict with *State v. Jenkins,* 62 Haw. 660, 619 P.2d 108 (1980). In *Jenkins,* two police officers smelled the odor of burning marijuana coming from a van

---

[15] Upon searching the handbag for gambling paraphernalia and weapons, the police discovered marijuana cigarettes. The court affirmed the defendant's conviction for unlawful possession of a narcotic drug and stated, "In making a search after a lawful arrest, officers may seize evidence of a crime different from the offense for which the arrest was made." *Park,* 50 Haw. at 276, 439 P.2d at 213.

occupied by the defendant and another person. After observing a plastic bag containing marijuana lying on a knapsack on the floor of the van, the defendant was arrested and taken to the front of the van. One of the officers then searched the van, seized, opened, and searched the knapsack, and found more drugs therein.

Arguably, the officers' smelling of burning marijuana and sighting of marijuana on the knapsack gave them valid reasons to search the knapsack for more evidence of the crime following the defendant's arrest for possession of marijuana. The Hawaii Supreme Court, however, refused to validate the warrantless search of the knapsack and seizure of its contents as being incident to a lawful arrest. The court cited *Park* and stated that "[a] contemporaneous search incidental to a lawful arrest may be made for the fruits of the crime, implements used to commit the crime and for weapons," but it nevertheless held that "[o]nce law enforcement officers have reduced luggage or other personal property to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." *Jenkins,* 62 Haw. at 665, 619 P.2d at 112.

Although it purported to follow *Park, Jenkins* seems to contradict *Park.* In both cases, the defendants were validly under arrest and the police had reasons to seize and search the arrestees' personal belongings for evidence of the crimes for which they had been arrested. Having arrested the defendants, the police in both cases also had under their exclusive control the seized belongings. But while the supreme court upheld the search of the defendant's handbag and seizure of its contents in *Park,* it struck down the search of the knapsack and seizure of its contents in *Jenkins.*

The *Jenkins* decision severely limits the incident to a lawful arrest exception since no warrantless search of a container would ever be valid once an officer seized it from an arrestee and thereby reduced the item to his "exclusive control" and no prudent police officer would search a container while it is still in the arrestee's control.

The federal precedent expressly rejects the theory that the very act of seizing and searching a container reduces it to an

officer's exclusive control.[16] Moreover, the validity of a search or seizure incident to arrest depends on whether the item seized was on the defendant's person or within the area of the defendant's immediate control at the time of his arrest, not at the time of the search or seizure. *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

The basis for the *Jenkins* decision is also in doubt[17] since it relied primarily on *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed. 2d 538 (1977), a case that was subsequently distinguished in *Belton* as not involving the incident to a lawful arrest exception.[18]

*Jenkins,* however, is the current Hawaii rule and we are constrained to follow it. Thus, *Jenkins* compels a conclusion that the seizure of the gun from Ortiz's knapsack was not valid under the incident to a lawful arrest exception to the warrant requirement because the knapsack was in Bennett's exclusive control when it was searched.

## V.

We note, however, that a material difference exists between the facts of this case and those in *Jenkins.* In *Jenkins,* the police

---

[16] The Supreme Court in *Belton,* stated:
It seems to have been the theory of the Court of Appeals that the search and seizure in the present case could not have been incident to the respondent's arrest, because Trooper Nicot, by the very act of searching the respondent's jacket and seizing the contents of its pocket, had gained "exclusive control" of them. 50 NY2d 477, 451, 407 NE2d 420, 422. But under this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his "exclusive control."
453 U.S. at 461-462, 69 L.Ed.2d at 776, n. 5.

[17] This comment relates only to the second part of the *Jenkins* opinion involving the search incident to a lawful arrest exception.

[18] In *Chadwick,* a warrantless search of a double-locked footlocker an hour and a half after federal agents had arrested the defendants and seized the footlocker from an automobile was found to have been constitutionally invalid and an invasion of the defendant's privacy interests under the fourth amendment. The Supreme Court emphasized in *Belton* that the search in *Chadwick* was not incident to a lawful arrest so that the search incident to a lawful arrest exception was not applicable.

did not know what was in the knapsack when they opened it and seized the contraband drugs contained therein. In the case at bar, Bennett knew when he felt the knapsack that a gun was in it, and he opened the knapsack merely to seize the weapon, not to conduct a general search. Consequently, the State urges us to validate the removal of the gun from Ortiz's knapsack under a "plain feel" rule. By analogy to the plain view rule, the theory is that a police officer who rightfully seizes a container and coincidentally feels a weapon, contraband, or evidence of a crime may open the container and remove the item. Since the Hawaii Supreme Court has not yet recognized a plain feel rule, this is an issue of first impression.[19]

---

[19] Although the Hawaii Supreme Court has not yet recognized a "plain feel" rule, it has adopted the "plain view" rule, *State v. Powell,* 61 Haw. 316, 603 P.2d 143 (1979); *State v. Kaaheena,* 59 Haw. 23, 28, 575 P.2d 462 (1978); *State v. Stachler,* 58 Haw. 412, 417, 570 P.2d 1323 (1977); *State v. Ogata,* 58 Haw. 514, 572 P.2d 1222 (1977), an "open view" rule, *State v. Hook,* 60 Haw. 197, 587 P.2d 1224 (1978); *Kaaheena, supra; Stachler, supra,* and an "open smell" rule, *see State v. Groves,* 65 Haw. 104, 649 P.2d 366 (1982).

As will be discussed in the text, *infra,* the plain view rule admits into evidence objects sighted in plain view so long as the original governmental intrusion into areas or activities in which the defendant has a reasonable expectation of privacy is justified by a warrant or an exception to the warrant requirement, the view is coincidental, and the evidence is immediately apparent to the police. In the open view situation, however, there is no intrusion which must first be justified nor must the view be coincidental because the object or activity is open and visible to members of the public. *Stachler,* 58 Haw. at 415-418, 570 P.2d at 1326-1327. Thus, under the open view rule, the police can be actually looking for a particular item but technically would not be conducting a "search" in the fourth amendment sense. *Kaaheena,* 59 Haw. at 28, 29, 575 P.2d at 466, 467; *Stachler,* 58 Haw. at 416, 570 P.2d at 1327, citing *Katz,* 389 U.S. at 351.

The reason for this difference between the plain view and open view doctrines is that plain view involves a "post-intrusive" situation whereas open view takes place in "non-intrusive" or "pre-intrusive" situations. Moylan, *The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle,* 26 Mercer L. Rev. 1047 at 1096-1101 (1975). In the plain view or post-intrusive situation, the observation takes place in a constitutionally protected area or is of an item or activity in which a person is entitled to a reasonable expectation of privacy. Since the initial governmental intrusion has already been sanctioned by a valid warrant or exception, no additional justification is needed for a search or seizure in the plain view situation. In a non-intrusive situation, the view takes place in a constitutionally non-protected area such as an open field, *Hester v. United States,* 265 U.S. 57, 58, 44 S.Ct. 445, 446, 68 L.Ed. 898, 900 (1924), or is of an item or activity in which a person is not entitled to a reasonable expectation of privacy. Because there is no problem of a constitutionally protected expectation of privacy to overcome, the police need no warrant to search for or seize evidence in the non-intrusive open view case. *Hook,* 60 Haw. at 201, 587 P.2d

A plain feel rule was recognized by the Court of Appeals for the Second Circuit in *United States v. Ocampo,* 650 F.2d 421 (2nd Cir. 1981). In *Ocampo,* the defendant was arrested as a participant in a narcotics conspiracy, and a paper bag sealed with tape and partially covered by loose clothing was seized from his car. After feeling the outside of the bag, the federal agent concluded that the bag was full of wrapped currency. His suspicions were confirmed by an inspection of the bag's contents. The court found:

---

at 1227 (warrantless seizure of marijuana plant in open view outside of doorway was valid). In the pre-intrusive situation, the open view is into a constitutionally protected area or is of an item or activity in which a person has a reasonable expectation of privacy. Although the view provides police with probable cause, a valid warrant or exception is still needed to effect a search or seizure in the pre-intrusive open view situation. *Dias,* 62 Haw. at 56-58, 609 P.2d at 640-641 (although gambling activities in open view from outside, warrantless entry into home was invalid); *Hook,* 60 Haw. at 202-203, 587 P.2d at 1228-1229 (warrantless seizure of marijuana plants in open view in locked shed was invalid).

The visually similar but legally distinct plain view and open view doctrines can be summarized as follows:

> Although they share the common denominator of a non-search, sighting of evidence in "open view," the non-intrusive observation needs no further justification for a seizure; the pre-instrusive observation does need an additional legal predicate for the intrusion necessary to effect the seizure; and the post-intrusive— or truly "plain view"—observations has already validly surmounted the intrusion hurdle. Every visual open view is not a constitutionally significant plain view. * * *

Moylan, 26 Mercer L. Rev. at 1100.

In Hawaii, an apparent progeny of the open view rule is the "open smell" rule recently developed by the state supreme court in *State v. Groves,* 65 Haw. at 110-115, 649 P.2d at 371-373. As in the open view rule, a person can claim no reasonable expectation of privacy in the airspace surrounding his person or possessions, or smells which are readily detectable by the human nose. Thus, in *Groves,* the Hawaii Supreme Court held that the warrantless use of a trained dog was not a search, and that the dog's sniffing of the airspace and positive alert provided probable cause to believe that marijuana was contained in the defendant's luggage.

*Groves* is theoretically analogous to the pre-intrusive open view situation. Although the sniffing by the dog did not constitute a search since the defendant had no reasonable expectation of privacy in the airspace or smells surrounding his luggage, the positive alert by the dog merely provided probable cause and a valid warrant or exception was needed to search the contents of the luggage in which the defendant retained a reasonable expectation of privacy. If, instead, there had been a valid warrant or exception justifying the search of the luggage and the marijuana was smelled thereafter, a plain view analogy would have been appropriate. Note that the court in *Groves* did not label its rule as being either an "open smell" or a "plain smell" rule. But while the court cited "plain smell" cases from other jurisdictions, it used a reasonable expectation of privacy analysis as in its open view cases. Therefore, we choose to refer to the rule of *Groves* as being the "open smell" rule.

The piece of tape sealing the paper bag in the back of [the defendant's] car did not transform the bag into a closed container subject to *Chadwick-Sanders-Dien* protection. Agent Mockler was able readily to identify its contents as wrapped currency simply by feeling the outside of the bag. Nor did the container appear to be of a type used for personal effects. Under the circumstances no expectation of privacy, judged by objective and reasonable standards, existed. *United States v. Mannino, supra,* 635 F.2d at 114. Where the contents of a container are easily discernible by frisking the exterior of a package, there is little likelihood that the owner could reasonably expect any sustantial degree of privacy. Under such circumstances it would be a pointless formality to require that the agents first obtain a warrant before examining the contents. Accordingly, we hold that the bag's contents could be examined under what amounts to a "plain feel" version of the "plain view" doctrine.

\*   \*   \*

*Ocampo,* 650 F.2d at 428-429.

To the extent that the plain feel rule in *Ocampo* was partially based on the defendant's diminished expectation of privacy in a paper bag, it has been rejected by the Hawaii Supreme Court. We have already noted in part II of this opinion that under *Jenkins,* Ortiz was entitled to a reasonable expection of privacy in his knapsack so that it could not be felt or opened without a warrant or a valid exception to the warrant requirement. Despite this recognition of Ortiz's reasonable expectation of privacy, however, we are convinced that Bennett's unzippering of the knapsack and removal of the gun from it were valid under a plain feel rule. Under the plain feel rule, where a government agent's feeling of the outside of a container is justified and weapons, contraband, or evidence of a crime[20] are then immediately, coincidentally, and definitely

---

[20] After validly opening a container to retrieve such an item, however, if the officer coincidentally sees evidence of a different crime for which he had no probable cause to believe that the defendant had committed, he may nevertheless seize the evidence

discerned, a government agent may open the container to remove such items even if the defendant has a reasonable expectation of privacy in the container.[21]

The plain feel rule is a logical analogy to the well-established plain view rule. Under the plain view rule, if the original governmental intrusion into activities or areas in which the defendant has a reasonable expectation of privacy was justified—such as by consent, warrant, exigent circumstances, or as incident to a lawful arrest—then objects inadvertently[22] sighted in plain view may be validly seized without a warrant. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971); *State v. Powell,* 61 Haw. 316, 603 P.2d 143 (1979); *State v. Kaaheena,* 59 Haw. 23, 28, 575 P.2d 462 (1978); *State v. Stachler,* 58 Haw. 412, 417, 570 P.2d 1323 (1977); *State v. Ogata,* 58 Haw. 514, 572 P.2d 1222 (1977). Even where the item itself is enclosed within a container which is transparent, of distinctive configuration, or otherwise reveals its contents to an observer, the item may be seized under the plain view rule. *Arkansas v. Sanders,* 442 U.S. 753, 764-765, n. 13, 99 S.Ct. 2586, 61 L.Ed. 2d 235 (1979). But "the 'plain view' rule may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Coolidge,* 403 U.S. at 466, 91 S.Ct. at 2038.

To understand the rationale for the plain view rule, it is necessary to keep in mind the two constitutional protections served by the warrant requirement. As the Supreme Court stated in the leading case on the plain view rule:

---

under the plain view rule. But the officer cannot conduct a warrantless exploratory search of other pockets or containers within the container seized if items therein are not immediately discernible by his senses as being evidence.

[21] In part IV, we held that the rule of *Jenkins* prevented Bennett from opening and searching Ortiz's knapsack to retrieve the gun. We would like to emphasize, however, that the plain feel rule is separate and distinct from the incident to a lawful arrest exception and has a different theoretical basis.

[22] Although the plain view cases use the word "inadvertently," we suggest that a more appropriate word is "coincidentally."

First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that *any* intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. . . . The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the "general warrant" abhorred by the colonists, and the problem is not that of intrusion *per se,* but of a general, exploratory rummaging in a person's belongings. . . . The warrant accomplishes this second objective by requiring a "particular description" of the things to be seized.

*Coolidge,* 403 U.S. at 467, 91 S.Ct. at 2038-2039 (citations omitted).

The plain view rule does not conflict with either of these constitutional objectives. In plain view situations:

[The] initial intrusion is justified by a warrant or by an exception such as "hot pursuit" or search incident to a lawful arrest, or by an extraneous valid reason for the officer's presence. And, given the initial intrusion, the seizure of an object in plain view is consistent with the second objective, since it does not convert the search into a general or exploratory one. As against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement. Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it.

*Coolidge,* 403 U.S. at 467-468, 91 S.Ct. at 2039. Thus, to protect against unreasonable governmental intrusions and general, exploratory searches, the plain view rule requires: (1) a proper warrant or valid exception justifying the initial intrusion; (2) a coincidental viewing of the evidence; and (3) an immediate perception by the government agents that they have the evidence before them. *Coolidge, supra;* Moylan, *The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle,* 26 Mercer L. Rev. 1047 (1975). *See also* 1 La Fave, *Search & Seizure, a Treatise on the Fourth*

*Amendment,* § 2.2 (1978).

We believe that the limitations and rationale of the plain view rule can be extended to create a plain feel rule. As in plain view situations, the plain feel rule would require that a governmental intrusion into a person's reasonable expectation of privacy be first justified by a warrant or an exception to the warrant requirement in order to meet the constitutional objective of protecting against impermissible government intrusions. By requiring the feel to be coincidental and the police to know immediately upon feeling an object that they have weapons, contraband, or evidence of a crime before them, the plain feel rule would also maintain the constitutional protection against general exploratory searches.

Under the plain feel rule, Bennett's opening of Ortiz's knapsack to remove the gun was valid. His initial intrusion upon Ortiz's reasonable expectation of privacy and seizure of the knapsack were justified under both the search incident to a lawful arrest and the investigative stop exceptions to the warrant requirement. His subsequent feeling of the gun from the outside of the knapsack was coincidental and he immediately recognized the object that he felt as being the butt of a gun. Thereafter, Bennett opened the knapsack merely to remove the weapon, not to conduct a general exploratory search. Thus, we uphold the officer's warrantless removal of the gun from the knapsack.

The suppression and dismissal decisions of the lower court are reversed and the case is remanded for further proceedings consistent herewith.

*Arthur E. Ross,* Deputy Prosecuting Attorney, for appellant.

*Peter England Roberts,* Deputy Public Defender, (*Alvin T. Sasaki* on the brief), for appellee.