STATE OF HAWAII, Plaintiff-Appellee, *v.* JUDY ELIZABETH CROWDER, also known as JUDITH ELIZABETH CROWDER, Defendant, and VINCENT SANTARONE, Defendant-Appellant

NO. 6731

JUNE 27, 1980

PADGETT, ACTING C.J., BURNS, J., CIRCUIT JUDGE CHANG IN PLACE OF CHIEF JUDGE HAYASHI, DISQUALIFIED

OPINION OF THE COURT BY BURNS, J.

Defendant-Appellant Vincent Santarone was convicted of theft in the first degree, in violation of Hawaii Revised Statutes section 708-831(1)(b), after a trial by jury in the First Circuit Court on June 23, 1977. On this appeal, he challenges the judgment of conviction, alleging that his warrantless arrest was effected without probable cause, and that physical evidence recovered from his person in a search incident to the arrest should not have been admitted into evidence at his trial.

The primary question on this appeal is whether the detention of Santarone was an unlawful arrest precluding admission of the evidence subsequently recovered. The issues involved are: (1) when Santarone was arrested, and (2) whether the record shows that the arresting officer had probable cause at the time of arrest.

Hotel security guard Albert Leong was on duty late in the afternoon of October 9, 1976. At approximately 5:00 p.m. Leong was in the lobby of the Queen Kapiolani Hotel when he saw a man (Vincent Santarone) and a woman (Judith Crowder) in a jewelry shop located in the lobby. A short time later he saw the same two persons in an obscure lobby on the second floor of the hotel. He observed them talking to each other there for five or ten minutes. They were not dressed like tourists and their behavior pattern seemed furtive to Mr. Leong. He rode the elevator down with them. They went into the jewelry shop again. Leong observed them from the lobby through the shop's plate glass window. He was suspicious. He called a female sales clerk out of the shop and cautioned her to watch the couple very carefully, as he anticipated a problem with them. He told the clerk that he would be in the lobby and that she should shout to him in case a problem occurred.

While Leong was talking to a tourist in the lobby, he heard the sales clerk shout his name. Before he got to the door of the shop, Crowder had already run into the lobby and was running into the street nearby the front of the hotel. Leong looked into the shop, saw that Santarone was still inside and, since everything inside seemed to be in control, ran after Crowder,

along Kapahulu Avenue and onto Cartwright Street, where he caught up to her. She sat down on the roadway of her own accord. Leong tried to get Crowder to stand up. She was swearing at him. A crowd began to form around them.

While Crowder was seated in the roadway, Leong saw a ring and a price tag between the fingers of her left hand. Santarone now reached the scene and went to Crowder, who had stood up. Leong held Crowder under her right arm and kept pushing Santarone away and telling him to stay away. In the process, Crowder's purse opened, the contents falling onto the road. Crowder asked for a light for her cigarette. Santarone tried to light it. Leong suspected that Crowder might try to pass the ring to Santarone and pushed him away again.

Leong was holding onto Crowder when police officers arrived on the scene. There were three or four police officers there. At about the same time some clerks from the jewelry shop also arrived. Leong saw a ring on the roadway and surmised it was the one Crowder had had in her hand. Leong pointed it out to a bystander, who picked it up and gave it to Leong, who gave it to "the officer". Leong pointed out to "the police officer" that the sales clerks were the people that were responsible for the jewelry. Leong told the "police officers" upon their arrival that the ring was given to him, that it belonged "to a fellow named Eugene", "one of the clerks at the store". Leong told "him" that he (Leong) was the security officer and that "the true complainant would be the store owner, which was Eugene".

Crowder was handcuffed and the whole group began to head back to the hotel. As Leong proceeded with "the group of officers" to the hotel, "the police officer on the motorbike" nudged Leong and pointed to Santarone. Leong indicated "to the police" that Santarone was Crowder's companion and said that Santarone was "involved in it, too".

According to Santarone's testimony at trial, ". . . somebody yelled out to stop me, so I turned around and I stood there and I looked back and there was some guy . . . telling the policeman to stop me and bring me back. So he did. Stopped his bike right there." The officer grabbed Santarone

by the arm. The officers and suspects returned to the hotel manager's office.

Honolulu Police Department Officer Jose Antenorcruz was on duty on October 9, 1976. He responded to a call regarding "this theft" by proceeding directly to the hotel. When he arrived, he spoke to Ms. Ashihara, the clerk who had reported the theft. A few minutes after Antenorcruz's arrival, Officer Andrade told him that "they" had "both the suspects in this case detained in the manager's office".

Antenorcruz brought Ashihara to the manager's office for a possible identification. When they entered the office, Ashihara pointed out both the male and the female as the suspects. Then Antenorcruz brought Ashihara to another room to question her on the activity of Santarone. Ashihara told him that Santarone was with Crowder and said that "he constantly tried to distract her attention while she was showing the rings to his partner".

Thereafter, Antenorcruz formally placed Santarone under arrest for theft. Immediately after placing him under arrest, Antenorcruz went to search Santarone's person and lifted up the front of Santarone's shirt. A ring fell from Santarone's waistband to the floor. Ashihara identified the ring as one of those taken.

Santarone moved to suppress the ring in a pretrial motion, which the trial judge denied. The ring was moved into evidence at the close of the State's case at trial. Santarone was convicted.

The first issue we must resolve is when Santarone was arrested.[1] He contends, as he did below, that he was arrested when he was taken into custody by the officer who grabbed his arm and returned him to the hotel for detention there while the police continued their investigation.

The State contends that Santarone was not arrested until Officer Antenorcruz formally placed him under arrest, after his return to, and detention at, the hotel. The State maintains that Santarone was detained for investigatory purposes; i.e., obtaining statements from witnesses, identifying the sus-

---

[1] The trial court made no findings of fact on denying the motion to suppress.

pects, and the recovery of stolen goods. The State submits that the police used good judgment in detaining Santarone until all the facts and circumstances of the theft were brought to light; that the detention was done with a minimum of force; that the movement back to the hotel and the detention in the manager's office were appropriate and reasonable under the circumstances; and that the fact that Santarone was not free to go did not in itself constitute an arrest.

In support of its argument, the State relies on *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny[2] which carved out an exception to the probable cause requirement for certain warrantless searches and seizures of the person.

However, *Dunaway v. New York*, 99 S.Ct. 2248 (June 5, 1979), which was decided subsequent to the submission of briefs in this case, is dispositive of this issue.

In *Dunaway*, the issue before the supreme court was whether the Rochester police violated the fourth and fourteenth amendments when, without probable cause to arrest, they took petitioner into custody, transported him to the police station, and detained him there for interrogation.

The State argued that its seizure of Dunaway was not an arrest and was permissible under the fourth amendment because the police had a reasonable suspicion that Dunaway possessed intimate knowledge about a serious and unsolved crime. The court rejected this contention and in an extended analysis delineated the difference between a limited *Terry* stop and any more extensive detention.

Emphasizing *Terry's* limitations, the court said that "[b]ecause *Terry* involved an exception to the general rule requiring probable cause, this Court has been careful to maintain its narrow scope". *Id.*, at 2255.

Like Dunaway, Santarone was not questioned briefly where he was found; he was returned to and detained at the

---

[2] *See, e.g., United States v. Brignoni-Ponce*, 442 U.S. 873 (1975); *Adams v. Williams*, 407 U.S. 143 (1972); *United States v. Coates*, 495 F.2d 160 (D.C. Cir. 1974); *United States v. Scheiblauer*, 472 F.2d 297 (9th Cir. 1973); *United States v. Hines*, 455 F.2d 1317 (D.C. Cir. 1972); *Gains v. Craven*, 448 F.2d 1236 (9th Cir. 1971); *State v. Barnes*, 58 Haw. 333, 568 P.2d 1207 (1977); *State v. Goudy*, 52 Haw. 497, 479 P.2d 800 (1971).

hotel while the police investigation continued, primarily focusing on Santarone's role in the theft. Like Dunaway, Santarone was not free to leave. "The application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion of this magnitude is termed an 'arrest' under state law." *Id.* at 2256. "[T]his type of action, despite the absence of the magic words ('I place you under arrest,' etc.), is an arrest, where the defendant clearly understands that he is not free to go." *State v. Delmondo,* 54 Haw. 552 at 557, 512 P.2d 551 at 554 (1973).

The *Dunaway* Court concluded that:

> . . . detention for custodial interrogation — regardless of its label — intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest. We accordingly hold that the Rochester police violated the Fourth and Fourteenth Amendments when, without probable cause, they seized petitioner and transported him to the police station for interrogation.

99 S.Ct. at 2258.

We conclude that Santarone was arrested and that probable cause was required when the police officer took physical custody of him and returned him to the hotel for detention there. *Id. Accord, State v. Delmondo, supra.*

Determining whether the trial court erred in admitting the ring as evidence requires inquiry into the lawfulness of the warrantless arrest and search. Searches conducted without a warrant issued upon probable cause are per se unreasonable under the fourth amendment to the Constitution of the United States, unless shown to fall within one of the specific exceptions to the amendment's warrant requirement. *Katz v. United States,* 389 U.S. 347, 357 (1967), *State v. Patterson,* 58 Haw. 462, 571 P.2d 745 (1977). The prosecution has the burden of showing that a warrantless search falls within one of the exceptions. *McDonald v. United States,* 335 U.S. 451, 456 (1948), *Jeffers v. United States,* 342 U.S. 48, 51 (1951).

One specific exception to the fourth amendment's warrant requirement is a search which is incidental to a lawful arrest. *United States v. Robinson,* 414 U.S. 218 (1973), *Chimel*

*v. California*, 395 U.S. 752 (1969). Where, as here, the search is incidental to an arrest, the search cannot be sustained unless the arrest was based on probable cause. *Henry v. United States*, 361 U.S. 98 (1959), *State v. Texeira*, 50 Haw. 138, 433 P.2d 593 (1967).

Once Santarone challenged the lawfulness of the State's warrantless arrest and the search incidental thereto, the State had the burden of showing that the arresting officer had probable cause to make the arrest. *See Beck v. Ohio*, 379 U.S. 89 (1964); *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974); *cf. McDonald v. United States, supra, Jeffers v. United States, supra, State v. Lloyd*, 61 Haw. 505, 606 P.2d 913 (1980), *State v. Patterson, supra*. More specifically, the State had to show that, at the moment of arrest,[3] the arresting officer had reasonable grounds to believe, from facts and circumstances personally known to him, or of which he had trustworthy information, that Santarone had committed, or was committing, an offense. *State v. Lloyd, supra, State v. Barnes*, 58 Haw. 333, 568 P.2d 1207 (1977), *Carroll v. United States*, 267 U.S. 132 (1925).

In passing on the validity of the arrest, we have considered the testimony contained in the record of the pretrial hearing on the motion to suppress and the trial itself.[4] [5] *Carroll v.*

---

[3] *See Beck v. Ohio, supra.*

[4] *State v. Onishi*, 53 Haw. 593, 499 P.2d 657 (1972) is cited in Appellant's Reply Brief, apparently for the proposition that our review should be limited to the evidence contained in the record of the motion to suppress hearing only. In *Onishi*, the Hawaii Supreme Court refused to consider affidavits attached to Appellant's Opening Brief which were not part of the record certified to the court on appeal. The court stated that:

On this appeal, we must review the circuit court judgment upon the evidence contained in the record, not upon matters outside of the record which were improperly presented to this court and not upon any surmise as to matters which [the police officer] might have known about [the defendant] but were not offered in evidence in the circuit court.

53 Haw. at 597, 499 P.2d at 660.

In the instant case, the trial transcript *is* part of the record certified to this court on appeal.

Santarone's appeal is bottomed on the alleged lack of probable cause for his warrantless arrest; an allegation which, if true, means that his right to be free from

*United States, supra, Rent v. United States,* 209 F.2d 893 (5th Cir. 1954), *United States v. Canieso,* 470 F.2d 1224 (2nd Cir. 1972).

The arresting officer did not testify at either the motion to suppress hearing or the trial. However, whether probable cause existed is determined *"not* by a subjective standard (*i.e. not* by the officer's personal opinions) but *by a 'reasonable man' (or objective) standard"*. *State v. Delmondo, supra,* (emphasis in original). Put another way, our focus must be what a reasonable person in the shoes of the arresting officer would have perceived. The arresting officer's failure to testify, although analytically troublesome, is not necessarily fatal to a finding of probable cause.

It is reasonable to infer that "the police officer on the motorbike", who nudged Leong and pointed to Santarone, is the same officer who "stopped his bike" and arrested Santarone by grabbing his arm and returning him to the hotel.

The record does not indicate when the officer on the motorbike arrived. We cannot assume that he heard any of the statements Leong made earlier to any officer(s), since Leong's testimony fails to identify any officer to whom he made statements.

It is reasonable to infer that the arresting officer was aware of Leong's indication that Santarone was Crowder's companion and that Santarone was "involved in it, too'', since it was the officer who directed Leong's attention to Santarone and who acted in response to Leong's information.

We cannot impute the information received by any other officer to the arresting officer. The testimony of all of the

---

unreasonable searches and seizures has been violated. It is a settled principle that in determining whether a defendant's constitutional rights have been violated by the admission of evidence claimed to have been seized without probable cause reviewing courts ordinarily consider the record made at both the motion to suppress hearing and at the trial. *See* cases cited in body of opinion immediately following this note and 3 Wright, Federal Practice and Procedure § 675 at 126-127 (1969 ed.).

[5] We have not, however, considered statements in the briefs of both parties containing "facts" which are not apparent from the circuit court record in this case. *Onishi, supra.* We decline to treat these statements as admissions. *Cf. State v. Apao,* 59 Haw. 625, 628, n.1, 586 P.2d 250, 254, n.1 (1978).

witnesses is totally devoid of any indication that any of the officers present communicated with each other or exchanged information prior to Santarone's arrest. Nor is there sufficient evidence to infer that the arresting officer was acting on a command or request of a fellow officer. In these circumstances, imputation is unavailable. *See Barnes, supra,* and *Moreno-Vellejo v. United States,* 414 F.2d 901, 904 (5th Cir. 1969), *certiorari denied* 400 U.S. 841 (1970).

Leong indicated to the arresting officer that Santarone was "her [*i.e.* Crowder's] companion". It is reasonable to infer that, even if he arrived only moments before, the arresting officer saw Crowder, who was by this time handcuffed and in custody, before he arrested Santarone; and that seeing Crowder handcuffed in police custody gave the arresting officer reasonable grounds to believe that she had committed an offense.

Leong's indication that Santarone was Crowder's companion and his statement that Santarone was "involved in it, too" are, of course, not facts or circumstances that were personally known to the arresting officer. In order to support a finding of probable cause, they must be deemed trustworthy information. The fact that an ordinary citizen, not an informer, is an eyewitness to a crime may be sufficient to deem that citizen's uncorroborated statements trustworthy information for purposes of determining probable cause. *See State v. Decano,* 60 Haw. 205, 211, 588 P.2d 909, 914 (1978). From the record in this case, *we* know that Leong was a security guard and an eyewitness to almost all pertinent events concerning Santarone's involvement in the theft. But we search this record in vain for *the arresting officer's knowledge of those facts.* As far as we know, the officer did not ask Leong if he was and did not hear Leong say that he was. There is no indication in this record that Leong was in uniform. Uncorroborated tips from unidentified "people on the street" who were previously unknown to the arresting officer, and whose reliability in the officer's eyes is not otherwise shown by the record, are not trustworthy information which can support a finding of probable cause. *See Recznik v. City of Lorain,* 393 U.S. 166 (1968).

On the record before us, Leong's indication that Santarone was Crowder's companion and his statement that Santarone was "involved in it, too" constitute the totality of the information the arresting officer had about Santarone at the moment of arrest. Assuming that this information would be enough to justify a reasonable police officer in believing that Santarone had committed an offense, the State's failure to show that the arresting officer knew that Leong was an eyewitness is fatal to its position.

When the constitutional validity of this arrest was challenged, "it was incumbent upon the prosecution to show with . . . more specificity than was shown in this case . . . why the officer thought the information was credible". *Beck v. Ohio, supra*. If the court is not informed of the facts upon which the arresting officer acted, it cannot properly discharge its function to determine whether that officer had probable cause. *Id*.

We hold that the State failed to show that the arresting officer had probable cause to arrest Santarone. His arrest was unlawful. Since the arrest was unlawful, the search incident thereto cannot be sustained. *Henry v. United States, supra; State v. Texeira, supra*. The ring and any other evidence recovered in the search should not have been admitted into evidence at Santarone's trial, and because it was, his conviction must be reversed. *Mapp v. Ohio*, 367 U.S. 643 (1961).

> In times of unrest, whether caused by crime or racial conflict or fear of internal subversion, this basic law and the values that it represents may appear unrealistic or "extravagant" to some. But the values were those of the authors of our fundamental constitutional concepts. In times not altogether unlike our own they won . . . a right of personal security against arbitrary intrusions by official power. If times have changed, reducing everyman's scope to do as he pleases in an urban and industrial world, the changes have made the values served by the Fourth Amendment more, not less, important.

Mr. Justice Stewart, speaking for the supreme court in *Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (footnote omitted).

Santarone's conviction is reversed and this matter re-manded for proceedings not inconsistent with this opinion.

*Gary Robert (Gary R. Yackel* on the opening brief) for defendant-appellant.

*Peter B. Carlisle (Stephen D. Tom* on the brief) for plaintiff-appellee.