2 P.3d 718

STATE of Hawai'i, Plaintiff–Appellee,

v.

Samuelu TAGAOLO, Defendant–Appellant

No. 22541.

Intermediate Court of Appeals of Hawai'i.

May 4, 2000.

Person Convicted of Certain Crimes, Hawai'i Revised Statutes (HRS) §§ 134–7(b) and (h) (Supp.1999); Possession of Ammunition by a Person Convicted of Certain Crimes, HRS §§ 134–7(b) and (h) (Supp.1999); and Place to Keep Pistol or Revolver, HRS §§ 134–6(c) and (e) (Supp.1999). Specifically, he challenges some of the February 23, 1999 Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Suppress Items (FsOF, CsOL, and Order). We conclude that Tagaolo's appeal has merit. We vacate and remand for further proceedings.

## BACKGROUND

On February 2, 1999, Tagaolo filed his Motion to Suppress Items (M/S) seeking to suppress evidence of a semi-automatic handgun and an ammunition magazine containing two rounds. He argues that these items were seized from his fanny pack (also referred to herein as a "fanny bag") following an illegal search. The M/S was heard on February 16, 1999. At the conclusion of the hearing, the circuit court stated that "[w]ith respect to the motion to suppress evidence, that is denied. There's no serious controversy to the version of events given by the police and by the Ward security personnel. And there being a valid search warrant, the search, the subsequent search was, therefore, legal."

The February 23, 1999 FsOF, CsOL, and Order state in pertinent part:

1. On September 17, 1998, Glen Sauer (Sauer) was employed by "Victoria Ward" as a Security Officer.

2. At about 11:26 a.m. on that date, Sauer was sent to the parking lot of 1240 Ala Moana Boulevard.

3. Sauer was sent to the area on a report of a person requesting assistance in "jump starting" a vehicle in the parking lot.

4. When he arrived in the area, Sauer was met by Samuelu Tagaolo [ (Tagaolo) ]. [Tagaolo] was the person requesting Sauer's assistance.

5. Sauer was unable to get the vehicle "jump started".

Michael G.M. Ostendorp and Shawn A. Luiz, on the briefs for Defendant–Appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and ACOBA, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Samuelu Tagaolo (Tagaolo) appeals the circuit court's April 30, 1999 Judgment, upon a jury's verdict, convicting him of Possession of Firearm by a

6. During their encounter, Sauer began to get suspicious about [Tagaolo] and the vehicle. He requested that a check be made to determine the status of the vehicle. Eventually, Sauer was informed that "Budget Rent–a–Car", the registered owner of the vehicle, had reported the vehicle as an outstanding stolen vehicle.

7. Upon receiving this information, Sauer requested the presence of a police officer from the Honolulu Police Department ("HPD").

8. On September 17, 199[8],[1] Domingo Oliveros [2] (Oliveros) was employed as a police officer with HPD. On that date, he was sent to 1240 Ala Moana Boulevard on a report from the "Victoria Ward" security department of a possible stolen vehicle. Oliveros arrived at the scene at about noon.

9. Upon arrival, Oliveros noticed "Victoria Ward" security officers waving their arms at him in an apparent attempt to get his attention. Oliveros also noticed [Tagaolo] in the parking lot.

10. As he pulled into the parking lot, Oliveros saw that the security officers were pointing to [Tagaolo]. Oliveros got out of his vehicle and told [Tagaolo] to sit down. [Tagaolo] ran past Oliveros.

11. [Tagaolo] ignored Oliveros' commands to stop. Oliveros gave chase. Oliveros saw a black fanny bag around [Tagaolo's] neck and shoulder. During the chase, Oliveros saw [Tagaolo] grabbing at the bag. At one point, it appeared to Oliveros that [Tagaolo] was attempting to open the bag at the zipper.

12. Eventually, Oliveros caught up with [Tagaolo] and tackled him. [Tagaolo] struggled with Oliveros and resisted his commands. The security officers assisted Oliveros but [Tagaolo] was able to get to his feet and continued to struggle.

13. At that point Sgt. Kerry Inouye (Inouye) arrived. He called out "Spray" and then delivered a one-second burst of pepper spray to [Tagaolo's] face.

14. Thereafter [Tagaolo] was taken into custody by Oliveros.[3]

15. HPD Officer Reupena Fitisemanu (Fitisemanu) arrived at the scene just as [Inouye] "sprayed" [Tagaolo]. Fitisemanu recovered the black fanny bag from Oliveros.

16. Thereafter, Fitisemanu carried the bag to his "Cushman" vehicle and tossed it onto the trunk of his "Cushman". When the bag landed, Fitisemanu heard a loud "thump" sound resembling that of a heavy metal object. Fitisemanu picked up the bag and felt the outer part of the bag. Fitisemanu noticed that the bag was made out of a soft material. Fitisemanu felt the shape of a firearm, specifically the hand-grip, barrel, and trigger and trigger guard areas. Neither Fitisemanu nor any other HPD officer or "Victoria Ward" security officer opened or otherwise searched the bag in any way.

17. Later that day, Fitisemanu submitted the bag into evidence at the HPD Evidence Room. Thereafter, he prepared a search warrant.[4]

---

1. The year was incorrectly stated as "1999."

2. In the record, this police officer's surname is spelled "Oliveros." In the transcript of the February 16, 1999 hearing, it is spelled "Oliveiros."

3. Police Officer Reupena Fitisemanu (Officer Fitisemanu) testified in relevant part as follows:

> Q. Okay. With regard to the person you're referring to as the "suspect," was that person being handcuffed by Officer Oliveiros?
> A. At that time, yes.
> ....
> Q. Can you point to him and describe what he's wearing?
> A. He's sitting on this table here with the light green and white inner—or under T-shirt.

[DEPUTY PROSECUTING ATTORNEY]: Your Honor, may the record reflect the identification of the defendant?
THE COURT: Yes.

4. Officer Fitisemanu's Affidavit in Support of Search Warrant filed on September 18, 1998, in the District Court of the First Circuit states in pertinent part:

> That on SEPTEMBER 17, 1998, at about 1156 hours, affiant was assigned to investigate [an] *Unauthorized Control of Propelled vehicle* case at, *1240 Ala Moana Boulevard*, City and County of Honolulu;
> ....
> That at about 1203 hours, at the aforementioned location, affiant placed [Defendant–Appellant Samuelu Tagaolo (Tagaolo)] under ar-

18. The following day, the Honorable Tenny Z. Tongg approved the search warrant for the bag.

19. The same day, Fitisemanu searched the bag and found a semi-automatic firearm, a firearm magazine, and two rounds of live firearm ammunition. All of the items were submitted back into evidence.

20. Sauer and Oliveros corroborated Fitisemanu's testimony that the bag was not opened or otherwise searched at the scene of the arrest.

21. [Tagaolo] called Vaa Aitavele (Aitavele) as a witness during the hearing on his motion. Aitavele was present at the scene during the arrest. Aitavele did not see the police or anyone else open the bag at the scene of the arrest.

22. [Tagaolo] testified at the hearing. [Tagaolo] acknowledged that his vision was impaired due to the "spray" to his face. [Tagaolo] did not see the police or anyone else open or otherwise search the bag at the scene of the arrest.

23. The Court finds the testimony of Fitisemanu as credible, and that the bag was not opened or searched [5] prior to the execution of the valid search warrant.

### CONCLUSION OF LAW

1. The Court concludes that the search warrant in this case meets the relevant state and federal constitutional standards. *State v. Nav[a]s*, 81 Hawaii [Hawai'i] 113, 913 P.2d 39 (1996); *State v. Decano*, 60 Haw. 205, 588 P.2d 909 (1978); *State v. Sepa*, 72 Haw. 141, 808 P.2d 848 (1991).

2. The affidavit in support of the search warrant set forth sufficient information from which the police could conclude that the item sought to be recovered (i.e., the firearm) would be located in the fanny bag. *State v. Sepa, supra.*

3. In addition, the facts, taken together with all reasonable inferences from those facts, clearly support a finding of probable cause. *State v. Decano, supra.*

### ORDER

Based on the foregoing, the Court denies [Tagaolo's] "Motion to Suppress Items".

(Footnotes added.)

A trial commenced on March 2, 1999, and, on March 3, 1999, a jury found Tagaolo guilty of Count I, Possession of a Firearm by a Person Convicted of Certain Crimes; Count II, Possession of Ammunition by a Person Convicted of Certain Crimes; and Count III, Place to Keep Pistol or Revolver. The April 30, 1999 Judgment sentenced Tagaolo to five years' imprisonment for each of Counts I and II and ten years' imprisonment for Count III, with all terms running concurrently.

### STANDARDS OF REVIEW

The standard for appellate review of a circuit court's findings of fact and conclusion of law is as follows:

Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed

---

rest for the offense of Unauthorized Control of Propelled Vehicle under the aforementioned report number.

That while at the scene[,] an additional arrest was effected on Tagaolo for the offense of Place to Keep in violation of Section 134–6 of the Hawai'i Revised Statutes based on the following;

That your affiant took the black fanny bag that was recovered from the person of Tagaolo to my cushman to prep to be transported as his personal property, affiant tossed the pack on top of the trunk of the cushman and it made contact with a loud thump resembling that of a heavy metallic object within.

Affiant then picked up the pack and examined it by feeling the outer case and it felt the shape of what appeared to be a semi automatic

type hand gun or pistol this is based on affiant's training and experience, that this is the only large object within the main compartment of the pack. There appeared to be other smaller items resembling that of cassette tapes in one of the compartments and possibly an ammunition magazine with one end that is spring loaded at the end where the ammunition is inserted.

That Tagaolo was placed under arrest for the additional offense under Police report number 98–346444 and the fanny pack was submitted into evidence pending a search warrant.

5. In this opinion, we conclude that Officer Fitisemanu's feeling of the contents of the fanny bag through its soft cover was a search.

by the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is left with a definite and firm conviction that a mistake has been made. The circuit court's conclusions of law are reviewed under the right/wrong standard. Furthermore, in a case such as the one at bar, the proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his own Fourth Amendment rights were violated by the search and seizure sought to be challenged. The proponent of the motion to suppress must satisfy this burden of proof by a preponderance of the evidence.

*State v. Balberdi*, 90 Hawai'i 16, 20–21, 975 P.2d 773, 777–78 (1999) (citing *State v. Anderson*, 84 Hawai'i 462, 466–67, 935 P.2d 1007, 1011–12 (1997)).

■ "The circuit court's ruling on a motion to suppress is reviewed *de novo* to determine whether, as a matter of law, the ruling was 'right' or 'wrong'." *State v. Kauhi*, 86 Hawai'i 195, 197, 948 P.2d 1036, 1038 (1997).

■ "The determination of whether a search was lawfully conducted is entirely a question of law, which this court reviews *de novo* under the right/wrong standard." *State v. Wallace*, 80 Hawai'i 382, 391, 910 P.2d 695, 704 (1996).

## DISCUSSION

Tagaolo contends that the circuit court reversibly erred when it denied his M/S. We agree. Specifically, Tagaolo challenges FsOF Nos. 11 and 16 and CsOL 1 through 3.

### FsOF Nos. 11 and 16

■ Tagaolo challenges that part of FOF No. 11 that states, "During the chase, [Officer Domingo Oliveros (Officer Oliveros)] saw [Tagaolo] grabbing at the bag. At one point, it appeared to [Officer] Oliveros that [Tagao-

lo] was attempting to open the bag at the zipper." Our review of the record reveals sufficient evidence supporting FOF No. 11. Officer Oliveros testified on direct or cross-examination that, during the chase, Tagaolo "was fumbling around with" the bag, "stopped and fumbled around with the bag," "[l]ooked like he was fumbling around with the zipper," and "through the whole run [Tagaolo] was fumbling around with the bag, but when he stopped to change direction to run makai [6], he was turning around, that's when I noticed he was in the zipper area."

■ Tagaolo challenges FOF No. 16 on the basis that "there was insufficient evidence to conclude that the officer managed to discover the semiautomatic handgun in the manner which the officer had indicated." Our review of the record reveals sufficient evidence supporting FOF No. 16. With respect to the fanny bag, Officer Reupena Fitisemanu (Officer Fitisemanu) testified as follows:

Well, when I got the fanny bag from Officer Oliveros I walked to my cushman, I was the uniformed officer for that day driving a cushman. I like tossed the bag on the top of the back of my cushman, which is on the trunk of the cushman, and it landed with a loud thunk like there was a metallic object in it.

. . . .

At first kind of shocked me that I didn't expect that. I knew the thing was heavy, but I didn't expect it to have that metallic sound. I again felt it and it felt what I believed was a shape of a handgun or a semiautomatic handgun.

### CsOL 1 through 3

Tagaolo challenges CsOL 1, 2, and 3, and argues that "the first search, the 'plain feel' of the 'fanny pack' was illegal and thus any subsequent search based on information for the first search should have been suppressed in accordance with the 'fruit of the poisonous tree' doctrine." More specifically, Tagaolo argues that:

---

6. The term "makai" means "toward the sea, in the direction of the sea." M. Pukui and S. Ebert, *Hawaiian Dictionary* 225 (1979).

The police officers conducted an illegal "plain feel" of [Tagaolo's] "fanny pack".

. . . .

This "plain feel" was illegal under any of the exceptions to the general warrant requirement.

The "plain feel" of the bag is not justified as a protective weapon search.

There was no probable cause to believe a handgun was inside the "fanny pack" merely by the loud "thunk" ... of the "cushman". When [Tagaolo] was first apprehended there was no basis for believing that he was armed and dangerous. [Tagaolo] never banished [sic] a knife or displayed any type of firearm. [Tagaolo] merely ran away because he was scared on account of being on probation. [Tagaolo] was being [apprehended] for a nonviolent crime, "unauthorized control of a vehicle" rather an [sic] a violent crime such as armed robbery.

With today's society there were more rational explanations for the loud "thunk" on the "cushman". It would have been more likely that [Tagaolo] had a car phone, pager and keys rather than a firearm.

■ "Plain feel" is a sibling of "plain view." "In search and seizure context, objects falling in plain view of officer who has the right to be in position to have that view are subject to seizure without a warrant and may be introduced in evidence." Black's Law Dictionary 1150 (6th ed.1990). In *Minnesota v. Dickerson*, the United States Supreme Court stated:

We think that [the plain view] doctrine has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point. See *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983); *Texas v. Brown*, [460 U.S. 730,] 740, 103 S.Ct. [1535,] 1542 [75 L.Ed.2d 502 (1983) ]. The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. See *Hicks*, supra, 480 U.S. 321, 326–327, 107 S.Ct. 1149, 1153 [94 L.Ed.2d 347 (1987) ]; *Coolidge v. New Hampshire*, 403 U.S. 443, 467–468, 469–470, 91 S.Ct. 2022, 2028–2029, 2040, 29 L.Ed.2d 564 (1971) (opinion of Stewart, J.). The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

508 U.S. 366, 375–76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (footnote omitted). The Supreme Court also stated the "police officer in each [case would have] had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification ... and permits the warrantless seizure." *Dickerson*, 508 U.S. at 376 n. 3, 113 S.Ct. 2130 (brackets in original)(citing *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (opinion of Stewart, J.)).

■ We are not called upon in this case to decide Hawaiʻi's attitude toward the "plain feel" doctrine [7] because this is not a "plain

7. In its certiorari review of this court's opinion in *State v. Ortiz*, 4 Haw.App. 143, 662 P.2d 517 (1984), the Hawaiʻi Supreme Court vacated this court's "plain feel" ruling but affirmed this court's decision on the basis "that the warrantless search here was a valid protective weapons search under *Terry v. Ohio*, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968) and its progeny."

feel" case. Officer Fitisemanu did not inadvertently feel the firearm and the ammunition inside the fanny bag when he received the fanny bag from Officer Oliveros or transported it to the Cushman.

▬▬▬ The feeling of the contents of a fanny bag through its cover in excess of the feeling reasonably incident to the necessary handling of the bag is a search of the contents of the fanny bag. That is what Officer Fitisemanu did in this case. After he tossed the fanny bag onto the trunk of his Cushman, the sound of the impact when it landed motivated Officer Fitisemanu to intentionally repossess the fanny bag and inspect its contents by feeling through its cover. That post-repossession intentional feeling of the contents of the fanny bag through its cover was an intentional warrantless search of the interior of the fanny bag. During that intentional warrantless search, Officer Fitisemanu obtained the reasonable suspicion required to obtain the search warrant. See footnote 4 above.

> Generally, judicial warrants are required prior to a search or seizure of "persons, houses, papers and effects" wherein an individual is entitled to a reasonable expectation of privacy. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Okubo,* 3 Haw.App. 396, 651 P.2d 494 (1982), cert. granted, 65 [67] Haw. [197, 682 P.2d 79 (1984) ]. See also *State v. Lester,* 64 Haw. 659, 649 P.2d 346 (1982). Whether a person is entitled to a reasonable expectation of privacy depends · upon whether 1) he has exhibited an actual, subjective expectation of privacy; and 2) that expectation is one which society is prepared to recognize as "reasonable." *Katz,* 389 U.S. at 361, 88 S.Ct. at 516 (Justice Harlan, concurring); *State v. Kaaheena,* 59 Haw. 23, 575 P.2d 462 (1978); *Okubo,* 3 Haw.App. at 403, 651 P.2d at 500.

*State v. Ortiz,* 4 Haw.App. 143, 149–50, 662 P.2d 517, 524 (1983).

Thus, in *Bond v. United States,* —— U.S. ——, 120 S.Ct. 1462, 1463, 1465, 146 L.Ed.2d 365 (2000), the United States Supreme Court concluded that when a border patrol agent who was lawfully aboard a bus "squeezed the soft luggage which passengers had placed in the overhead storage space above the seats," "the agent's physical manipulation of [a passenger's] bag violated the Fourth Amendment."

In Tagaolo's case, Tagaolo had a reasonable expectation of privacy in the contents of his fanny bag. He exhibited a subjective expectation of privacy which society recognizes as reasonable. *See State v. Jenkins,* 62 Haw. 660, 619 P.2d 108 (1980) (knapsack), and *United States v. Meier,* 602 F.2d 253 (10th Cir.1979) (backpack). Tagaolo's reasonable expectation of privacy entitled him to be free from all warrantless searches of the contents of his fanny bag.

When Officer Fitisemanu heard the fanny pack land on the trunk of his Cushman, he did not reasonably suspect that it contained a firearm or ammunition. His information was then insufficient to support the issuance of a search warrant. Moreover, there is no evidence of his reasonable need to know the contents of the fanny bag. At that time, Tagaolo was some distance away in the custody of other police officers and handcuffed. After he repossessed Tagaolo's fanny bag, Officer Fitisemanu's intentional feeling of the weight, size, shape, and density of its contents through its cover constituted a warrantless search of the interior of Tagaolo's fanny bag. There is no evidence and there are no facts supporting a conclusion that the warrantless search of Tagaolo's fanny bag by the police fell within any of the specifically-established and well-delineated exceptions to the warrant requirement outlined in cases

State v. Ortiz, 67 Haw. 181, 182, 683 P.2d 822, 824 (1984). The Hawai'i Supreme Court concluded that after the police officer "reached down and took the sack away from Ortiz, immediately feeling 'what seemed like a butt to a handgun' through the thin fabric[,]" the police officer was authorized to unzip the bag and verify that it contained a handgun and holster. *Id.* In other words, the "plain feel" authorized the

unzipping and search. The material differences between the instant case and *Ortiz* are the facts that Ortiz had not been arrested and was not in police custody and "without opening the knapsack [the police officer] may not have had the requisite probable cause to arrest Ortiz and obtain a search warrant and thus may have had to return the knapsack to Ortiz unexamined." *Id.* at 185, 683 P.2d at 826.

such as *Jenkins*, 62 Haw. at 662, 619 P.2d at 110 (automobiles); *State v. Elderts*, 62 Haw. 495, 498, 617 P.2d 89, 92 (1980) (probable cause/exigent circumstances); *State v. Kender*, 60 Haw. 301, 307, 588 P.2d 447, 451 (1978) (consent, search incident to a valid arrest, investigative stop/frisk/pat down, protective search, exigent circumstances, automobile search); and *State v. Kaluna*, 55 Haw. 361, 374–75, 520 P.2d 51, 61–62 (1974) (post-arrest inventory search).

 Therefore, CsOL 1, 2, and 3 are wrong. Officer Fitisemanu's reasonable suspicion [8] that the firearm and the ammunition were in the fanny bag is a fruit of that poisonous tree. Excluding his reasonable suspicion that the firearm and the ammunition were in the fanny bag, his information in support of the search warrant was insufficient to authorize the issuance of the search warrant. It follows that the search warrant was invalid, the search conducted pursuant to it was invalid, and the fruits of that invalid search may not be used against Tagaolo.

## CONCLUSION

Accordingly, with respect to the February 23, 1999 Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Suppress Items, we reverse the Conclusions of Law and Order. In other words, the February 2, 1999 Motion to Suppress Items should have been granted. We vacate the April 30, 1999 Judgment and remand for further proceedings consistent with this opinion.

---

**8.** In *Ortiz*, the Hawai'i Supreme Court stated in relevant part as follows:

> Although the trial and intermediate courts thought Bennett had probable cause to arrest Ortiz the instant he suspected he felt a gun butt, we are not so certain. Bennett could not be positive the knapsack contained a gun until he opened it. Indeed, Ortiz's counsel argued this point at the suppression hearings. Furthermore, it is not illegal in Hawaii [Hawai'i] to carry a concealed gun if the carrier has a license. *See*, HRS § 134–9 (Supp.1983). Thus, prior to opening the knapsack it is likely Bennett had grounds for a reasonable inference that Ortiz was armed rather than probable cause to believe Ortiz was committing a crime.

67 Haw. at 186–87, 683 P.2d at 827 (footnote omitted).