21 P.3d 475

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Leslie R. BARRICKMAN,
Defendant–Appellee.**

No. 23212.

Intermediate Court of Appeals of Hawai'i.

March 13, 2001.

James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellant.

Paul J. Cunney, R. Patrick McPherson, and Victor J. Bakke, on the briefs, for Defendant–Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiff–Appellant State of Hawai'i (State) appeals the district court's February 10, 2000[1] Order Granting Defendant's Motion to Suppress for No Reasonable Suspicion to Stop and Oral Motion to Dismiss. We reverse the order granting the motion to suppress, vacate the order granting the oral motion to dismiss, and remand for a new trial by a different judge.

## CHARGE AND DEFENDANT'S MOTION TO SUPPRESS

Defendant Appellee Leslie R. Barrickman (Barrickman or Defendant) was charged with Driving Under the Influence of Intoxicating Liquor (DUI), Hawai'i Revised Statutes § 291–4 (Supp.1999). The trial was scheduled to occur on January 28, 2000. On January 24, 2000, Barrickman filed Defendant's Motion to Suppress for No Reasonable Suspicion to Stop (the M/S) seeking suppression of "all evidence (physical or otherwise) obtained as a result of violation of Article I, section 7 [Searches, Seizures and Invasion of Privacy] of the Hawaii State Constitution."

## PRECEDENT AS TO WHEN A PERSON IS "SEIZED"

■ Generally, a person is "seized" if, "from an objective standpoint and given the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave." Also, a person is seized "when a police officer approaches that person for the express or implied purpose of investigating him or her for possible criminal violations and begins to ask for information."

State v. Kauhi, 86 Hawai'i 195, 203, 948 P.2d 1036, 1044 (1997) (internal citations omitted).

## PRECEDENT AS TO WHEN A SEIZURE BY THE POLICE IS AUTHORIZED

■ To justify an investigative stop, ... "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." ... The ultimate test in these situations must be whether from these facts, measured by an objective standard, a man of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate.

State v. Barnes, 58 Haw. 333, 338, 568 P.2d 1207, 1211 (1977).

## MOTION TO SUPPRESS EVIDENCE— WHICH PARTY HAS THE BURDEN OF PROOF

1. The Situation When the Search Was Under a Search Warrant.

■ When the search was under a search warrant, the moving party has the

---

1. The file mark of the Order Granting Defendant's Motion to Suppress for No Reasonable Suspicion to Stop (Order) was filed on February 8, 2000; however, the Order was dated and signed by the judge on February 10, 2000. We conclude that the Order was entered on February 10, 2000, the date the Order was signed by the judge.

initial burden of establishing that the search was illegal. 3 C. Wright, Federal Practice and Procedure § 675 (1982); *State v. Tagaolo*, 93 Hawai'i 314, 2 P.3d 718 (App.2000). In these situations,

> the proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his own Fourth Amendment rights were violated by the search and seizure sought to be challenged. The proponent of the motion to suppress must satisfy this burden of proof by a preponderance of the evidence.

*State v. Balberdi*, 90 Hawai'i 16, 21, 975 P.2d 773, 778 (App.1999) (quoting *State v. Anderson*, 84 Hawai'i 462, 466–67, 935 P.2d 1007, 1011–12 (1997)).

2. The Situation When the Search Was Without a Search Warrant.

 When the search was without a warrant, the burden is on the State to bring the case within one of the exceptions to the warrant requirement. 3 C. Wright, Federal Practice and Procedure § 675 (1982). For example, when the State asserts that a search was by consent, the burden is on the State to prove that the consent was voluntarily given. *Id.*

 As noted by this court in *State v. Crowder*, 1 Haw.App. 60, 66, 613 P.2d 909, 914 (1980) (citations omitted), "[o]nce [the defendant] challenged the lawfulness of the State's warrantless arrest and the search incidental thereto, the State had the burden of showing that the arresting officer had probable cause to make the arrest."

### EVIDENCE CONSIDERED WHEN REVIEWING DENIAL OF A MOTION TO SUPPRESS

 [W]hen the defendant's pretrial motion to suppress is denied and the evidence is subsequently introduced at trial, the defendant's appeal of the denial of the motion to suppress is actually an appeal of the introduction of the evidence at trial. Consequently, when deciding an appeal of the pretrial denial of the defendant's motion to suppress, the appellate court considers both the record of the hearing on the motion to suppress and the record of the trial. *State v. Nakachi*, 7 Haw.App. 28, 33 n. 7, 742 P.2d 388, 392 n. 7 (1987); *State v. Uddipa*, 3 Haw.App. 415, 416–17, 651 P.2d 507, 509 (1982); *State v. Crowder*, 1 Haw. App. 60, 66–67, 613 P.2d 909, 914 (1980).

*State v. Kong*, 77 Hawai'i 264, 266, 883 P.2d 686, 688 (App.1994).

 Hawai'i Rules of Penal Procedure (HRPP) Rule 12(e) states that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." It logically follows that when the trial judge's findings on the motion to suppress are materially different than the pretrial findings on the motion to suppress, the trial judge must state those materially different findings on the record.

### QUESTIONS PRESENTED BY THE MOTION TO SUPPRESS

The questions presented by the M/S were: (a) Did the investigative stop commence before the police officer ordered Barrickman to pull his car over onto Maile Way (against the curb)? (b) If so, when? (c) If so, when the investigative stop commenced, would a person of reasonable caution believe that criminal activity was afoot and that the action taken was appropriate?

### DISTRICT COURT'S PROCEDURE PRE STATE'S EVIDENCE

When the hearing on the M/S commenced at 3:30 p.m. on January 28, 2000, the date of trial, the following was stated:

> [DEFENSE COUNSEL]: ...
>
> With this time, I believe we are ready to proceed on our Motion to Suppress for No Reasonable Suspicion to Stop.
>
> THE COURT: Okay. Now, and we're going to do some kind of consolidations so—
>
> . . . .
>
> [DEFENSE COUNSEL]: We would consolidate this testimony and incorporate it into the testimony to be given at trial.
>
> THE COURT: Okay.

[DEPUTY PROSECUTING ATTORNEY (DPA)]: If it should go that far, your Honor.

THE COURT: Right.

. . . .

[DPA]: . . .

Your Honor, at this time, the State would call Officer Conradt.

## STATE'S EVIDENCE—POLICE OFFICER CONRADT'S TESTIMONY

On July 8, 1999, at approximately 10:40 p.m., Police Officer Todd Conradt (Officer Conradt) was on special assignment directing traffic at a water main break. Using hand-signals, he directed cars proceeding toward him on University Avenue to make a left turn onto Maile Way to go around the water main break. Barrickman approached the flashing yellow lights at the intersection. Barrickman was operating a white Mercedes convertible automobile and the top of the automobile was down. Officer Conradt waved Barrickman to make a left turn onto Maile Way. Barrickman did not comply with Officer Conradt's hand instruction. Instead, Barrickman stopped and "stay[ed] in that position for approximately three to five seconds[.]" Barrickman was alone and looking straight ahead. Officer Conradt walked over to the passenger side of Barrickman's car and walked around the back of it to the driver's side. Officer Conradt then explained to Barrickman that he couldn't go straight but had to go left on Maile Way to the next traffic light where he could get back on University Avenue. Barrickman was smiling and trying to shake Officer Conradt's hand. Barrickman said that he needed to go straight, that he needed to go home. Officer Conradt realized that Barrickman did not know how to get home. Officer Conradt observed that Barrickman had glassy eyes and the smell of alcohol on his breath. Officer Conradt decided that Barrickman was impaired. Officer Conradt told Barrickman to pull his vehicle over to the right onto Maile Way. After Barrickman complied, Barrickman continued trying to shake Officer Conradt's hand.

## DISTRICT COURT'S PROCEDURE POST STATE'S EVIDENCE

When Officer Conradt finished his testimony, the following was stated:

[DPA]: I believe at this time, your Honor, that we can make a ruling on that motion. At least the State has nothing more to submit, evidence for the motion.

THE COURT: Okay. Let me hear some argument.

You can have a seat, Madam Prosecutor.

[DEFENSE COUNSEL]: Reserving my right to call further witnesses after the argument at this point. And the Prosecutor hasn't proven it by this point, there would be no need for the defense to actually put witnesses on and—and—and take further testimony.

THE COURT: I—I understand that.

And my understanding, by the way, in terms of whether or not the defendant testifies for purposes of this proceeding is that it's basically the intent of the officer that's being analyzed, not—not the defendant's intent. So am I correct about that? I mean, what we're trying to find out is whether or not the officer made a proper stop, not—and so the—the defendant's testimony[.]

[DEFENSE COUNSEL]: Right.

THE COURT: Although he might—he might have some ideas about gee, exactly how it looked and what the officer did, and those sorts of things. But so do we need the defendant's testimony or are you going to offer the defendant?

[DPA]: I guess the first thing that is before the Court is whether—

[DEFENSE COUNSEL]: Whether the State—

[DPA]:—we've met our burden.

[DEFENSE COUNSEL]:—has met its burden at this point.

. . . .

[DPA]: And then if—if we—if we have, then they might—

[DEFENSE COUNSEL]: That's what I was trying to say.

THE COURT: It's sort of like a motion for judgment—

. . . .

[DEFENSE COUNSEL]: At this point, by the preponderance of the evidence, has the—has the State rebutted my Motion to Dismiss [sic] for Lack of Reasonable—

THE COURT: Okay.

[DEFENSE COUNSEL]:—Suspicion To Stop.

## DISTRICT COURT'S CONSIDERATIONS AND DECISION

The district court articulated its thoughts and decisions, in relevant part, as follows:

THE COURT: . . .

And [Officer Conradt is] over here on the passenger side, and he's motioning [Barrickman] on, and suddenly, for whatever reason, he starts walking around the back of the car to go over to the driver side. What does that telegraph to the driver? Is the driver suddenly thinking I'm in trouble now or—

. . . .

THE COURT:—or is he going to, you know, in other words, it's—why doesn't the officer just asked [sic] the questions and do the whole thing right where he is? Why does he go around the car?

. . . .

THE COURT:—the guy, the three to five seconds goes by, which doesn't seem like a real long time, and he suddenly decides, the officer suddenly decides without saying anything like move on, or gee, are you trying to get to Manoa, or do you understand these signs or not. There's construction here. He doesn't say a word to him. He just starts walking around the back of the car. Does that seem like a—like something you do in order just to get somebody to move through the intersection?

. . . .

THE COURT: . . .

And what he testified to is yes, [Officer Conradt] was trying to find out why [Barrickman] wouldn't move on. But he was also concerned about the driver being im-

paired. If he was concerned about the driver being impaired, and he walked around to the driver side, then you would concede that's a traffic stop?

. . . .

THE COURT: Well, if he—if he goes around to investigate somebody being impaired with alcohol since he's seen these glassy eyes, and he's decided this guy's crazy and shouldn't stop there, there's a traffic stop in the sense that he's investigating an impaired driver. You—do you agree with that, if that was his motivation for going around and—

. . . .

THE COURT: . . . Is it a traffic stop of which he has to justified [sic] reasonable articulable facts if he walks around the back of the car with the intent to investigate the impaired condition of the driver? Is that a traffic stop?

. . . .

THE COURT: The—the part of that strange thing about this case . . . is that the officer seem to—reluctant to tell me that he was going around the car for just to help him to move on. You know, he wanted to make sure I knew that he saw the glassy eyes on that side of the car, and that he was going around in part because he thought he was impaired.

I think the officer thought that unless he told me that, that somehow this was going to be suppressed. But I think exactly the opposite is the situation. Because if he sees glassy eyes, and he thinks this guy is impaired, because he's stopped there, and he walks around the car to investigate, he is not just trying to move traffic on. He's not just taking care of a construction area. He is starting an investigation.

And it seems to me that if an officer, even if it's just his—his normal course in traffic stops walks around the back of a vehicle, and maybe he did not do the front of the vehicle, because he's afraid the guy would run him over, but around the—around the back of a vehicle to essentially confront him. That the message would be not so much move on, fellow. It would be why have you stopped here, and why are your eyes glazed, and let me get closer so I

can sniff and see if there's a smell of alcohol. That seems to be what the officer testified to.

I acknowledged it's not clear, but the question is whether or not when an officer walks around, and leans in, and starts talking to you, you feel you are free to go. And I—and I think there's a fairly good argument that once the officer starts to walk around the back, that nobody is going to leave in a circumstances [sic] like that. I mean, if they were going to leave—if they weren't going to leave before, they're certainly not going to leave when an officer goes around to start to talk to you.

I mean, I think that the reason that there—we have to look at the reason behind the suppression in this case. What we're trying to do is keep officers from making people think they are not free to go without reasonable and articulable suspicion.

Now, the final question, are glazed eyes and—and stopping for three to five seconds enough? Are—are those articulable? Part of the problem is the officer isn't really sure what he was doing. And so I'm not sure he was maybe specifically making a stop.

. . . .

THE COURT: . . .

It seems to me that there are—there are a number of reasonable and articulable facts in order to—to stop him on Maile. I think by the time he orders him through over to Maile, he's got enough, but he's generating that with what looks to the Court like an illegal stop. So I am going to suppress.

[DEFENSE COUNSEL]: Based on the suppression, I would move to dismiss the charges against my client.

[THE COURT]: Madam Prosecutor.

[DPA]: No. We can't go forward with the case at this—

. . . .

[DPA]:—if the—if the stop is suppressed.

THE COURT: Okay. Dismissed.

## DECISION REGARDING THE DISTRICT COURT'S PROCEDURE

There was no search warrant in this case. Therefore, the State had the burden of proof. After the State presented its sole witness, the district court decided the M/S notwithstanding Barrickman's express reservation of the right to call his witnesses.

There are two ways we may characterize the district court's procedure in this case.

First, it may be that the district court heard the M/S pretrial. If so, the district court found the relevant facts before all of the evidence had been presented.

Second, it may be that the district court did not hear the M/S pretrial. Instead, the district court proceeded directly into trial and then, after the State presented its sole witness, decided the M/S as if the district court was authorized to do so via a HRPP Rule 29(a) Motion for Judgment of Acquittal. That rule pertains to "judgment of acquittal of one or more offenses alleged in the charge[.]" It does not pertain to motions to suppress evidence.

Either way the district court's procedure is characterized, it was wrong. With respect to motions to suppress, all evidence that is going to be introduced in evidence must be introduced before the district court decides the motion. Until all the evidence is introduced, the district court cannot decide the relevant facts. In this case, the district court decided the M/S based solely on the State's evidence. If we disagreed with the district court then, upon remand, Barrickman would have the opportunity to contradict the State's evidence and change the facts.

Moreover, the district court's implicit decision, based on Officer Conradt's testimony, that an investigative stop occurred before "a [person] of reasonable caution would believe that criminal activity was afoot and that the action taken was appropriate" is wrong. When Barrickman failed to follow Officer Conradt's hand instructions, the possibilities were various. The longer Barrickman remained stopped, the more the possibilities narrowed. Under the circumstances, it was appropriate for Officer Conradt to

walk over to Barrickman. So as not to pass in front of Barrickman and inhibit Barrickman's left turn, it was appropriate for Officer Conradt to walk around the passenger side of Barrickman's car. So as not to commence an investigative stop, it was appropriate for Officer Conradt not to ask Barrickman any questions while he was going around Barrickman's car or immediately upon arriving at Barrickman's side. It was appropriate for Officer Conradt to commence explaining the situation to Barrickman and, while doing so, to narrow the possibilities of why Barrickman did not follow his instructions.

 Officer Conradt did not stop Barrickman. Prior to Officer Conradt's ordering Barrickman to drive his car over onto Maile Way, a reasonable person in Barrickman's shoes would not have believed that Barrickman was not free to leave. The investigative stop did not commence until Officer Conradt ordered Barrickman to drive his car over to Maile Way. We agree with the district court that "by the time [Officer Conradt] orders [Barrickman] through over to Maile [Way], he's got enough[.]"

## CONCLUSION

Accordingly, with respect to the February 10, 2000 Order Granting Defendant's Motion to Suppress for No Reasonable Suspicion to Stop and Oral Motion to Dismiss, we reverse the order granting the motion to suppress, vacate the order granting the oral motion to dismiss, and remand for a new trial by a different judge.